All right, our fifth case for this morning is United States v. James White. Mr. Carlson? My name is Kent Carlson and I represent Mr. James White in this appeal. The government's brief has indicated that there are two issues that we have not met. One, that the statements that were made were merely inadvertent, and number two, the statements weren't relied on by Judge Buckwell. I'm going to start out with a statement made by the Assistant United States Attorney in this case, and I want to say to this Court, I am not suggesting, and have never suggested, that the statements made by the Assistant United States Attorney were intentionally misleading, or she in any way did anything improper, and I would concede they are misstatements or misquotes. But they're mistakes, no matter how you look at it. And one of them was, the Assistant United States Attorney, in talking about all of the reasons probation had given for Mr. White's not complying with the conditions of his supervised release, was that even getting him to submit to a psychological evaluation was a problem, and he refused to do that. Two things with that argument. Number one, and I should point out that it's referred to as a psychological, it was actually a psychiatric examination that was requested. But that was never a condition of Mr. White's supervised release. When the U.S. Attorney's Office realized that, probation asked for it. Mr. White said no, it's not a condition. The government filed a motion to modify the terms and conditions of the supervised release. Judge Bucklow ordered that the psychological, psychiatric evaluation be done, and Mr. White voluntarily, in compliance with the court order, did the evaluation. So I understand your position there is simply that it wasn't a condition, he was allowed to say it's not a condition, it was changed easily enough, and he complied. But he wasn't violating any condition of supervised release by not doing it. While the statements that the Assistant United States Attorney made were inadvertent, the statements that the probation officer made were far from inadvertent. Well, the probation officer really spouts off, but the question is, what effect does this really have on the judge? It seems to me, when all is said and done, she's thinking that there needs to be some marginal punishment for this. And this struck me as really all about the choice of a consecutive sentence. And that's correct, Judge, but I think where it becomes important is this. Judge Bucklow agreed with the probation department that he was not amenable to, and she agreed with the probation officer when he said he's not amenable to supervision. The judge goes on to say that she took that into account in arriving at the appropriate sentence. And I think that that's where the problem lies, because the judge refers to all of these violations of supervised release, and she refers to them in the plural, not in the singular. And she's agreeing with the probation officer, who's saying my client, out of the blue, is a sociopath. He says a lot of things. Are you really complaining that he didn't say more? Because actually, in general, when supervised release revocations are at issue, the judge would listen to what the probation people had to say, wouldn't they? I mean, this guy was pretty intemperate. I agree with you about that. Certainly, Judge, but his comments were not even on point to what Judge Bucklow was asking. She was asking whether the state court violation occurred on more than one occasion, and all of a sudden, he comes out and starts calling him a psychopath and suffering from severe antipersonality disorder. And he's the one who's just cheating on these gas credit cards, right? That's correct. He's trying to get the extra money, yeah. And he just kept going on, and he kept going on. And then the problem that I really think is the problem is the judge then says, or he says, this is why this man shouldn't be on supervision. He actually said that people who suffer from that are not amenable to supervision. And so he is saying, for all these reasons, Judge, none of which are supported by the record, none of which were anything other than the only thing in the record is the report itself that said no further treatment is necessary or intervention is necessary. He's saying, gratuitously and for no reason, this is why people with these sociopaths, antisocial personality disorders, they're not amenable to supervision, so you shouldn't. You should sentence them as long as you can, and then don't put them on supervised release anymore. And the judge says, you know what, I agree with you. But she's agreeing with something that is improper. And I suggest that the comments that he made are far more than offhand comments. And I know this court has said many times that there are a few words standing alone that would warrant a reversal in this. The words that were spoken here were far more than just a few little words. They were very, very serious accusations with absolutely nothing to support them, which the judge then relies on and says she relies on in imposing the sentence that she did, and part of that is the consecutive sentence. I think those words alone are enough to warrant a reversal and a remand for resentencing. But when considered with all the other statements that I discussed in our briefing, I'm not going to go into those any further. I think they are sufficient for this court to vacate the sentence imposed and remand the matter for resentencing. Okay, thank you. Thank you. Ms. Mecklenburg. May it please the court, my name is Sherry Mecklenburg and I represent the United States. The district court's imposition of a below-guideline sentence upon revocation of the defendant's supervised release was not plainly unreasonable. The court based the sentence on the Section 3553A factors, including the nature of the underlying conduct, which was repeated and continuous. Could I ask, though, what confidence can we have? Sometimes you have a situation where a particular sentence might be quite acceptable if you know that it's arrived at the right way, but there's something in the record that undermines your confidence. You don't know if the district court would come to that same sentence again. I mean, we've remanded frequently for that sort of reason. So what reassurance do we have that these outbursts from the probation officer, in particular, didn't taint the sentence she chose? Maybe it would have been a one-year consecutive sentence. There are lots of possibilities that you can imagine that would have been within the realm of her discretion, but there's this poison in the well. So how do we know it doesn't affect things? Because, Your Honor, the district court went through the 3553A factors and explained it. Well, I know you asked her to do that, but some of the things she says make one think that she is, in fact, crediting what this probation officer said. There is nothing in the record that shows that she actually credits his... It certainly doesn't sound like you're amenable to any supervised release. Well, he's the only one who says that. The court also stated that the court itself observed that the defendant did not appear to be amenable to supervised release. And keep in mind that the defendant had appeared before the court multiple times, and the defendant and the probation officer... What had he done wrong? She adds the condition for the psychiatric examination. He complies. She lets him visit with his grandchildren. There's certainly a misstatement about living with versus visiting, but I don't think that's earth-shattering. But as far as we know, he's complying with those terms. What's she talking about, if not the kinds of things the probation officer was raising? The district court appears to be talking about that from July through August, the defendant repeatedly violated supervised release. Were you the trial lawyer or prosecutor in the court? I am, Your Honor. Has this probation officer been before that court often? Pardon me? Has this probation officer been before that court often? I have only encountered this probation officer in this one case, Your Honor. This is the only case you ever encountered that probation officer? That's the only case I've had with him. Got a big mouth, hasn't he? His comments were inappropriate. Grossly inappropriate. Yes, absolutely. He misunderstood his role altogether, I would think. Yes, Your Honor. But the district court also sought for what it was. And what the district court was referring to and made clear in its discussion, the 3553A factors, was that the district court was relying on the defendant's repeated conduct. That were violations of the supervised release. That it wasn't just one time, but he kept on. The district court also talked about how the defendant minimized his conduct. The defendant came to court and talked about how, well, he had to commit this criminal conduct because he needed money. Things came up, he said. In addition, the defendant... The district court might have chosen re-imprisonment for 20 months. I just don't think that's what this case is about. I think it's about whether this choice was based on a record that we can rely on. There's nothing in the record that shows that the district court took the probation officer's comments into account in setting the below guidelines sentence, Your Honor. It appears that everyone in the courtroom ignored those statements and moved on to something more relevant, I believe, right after those comments. The government asked if the court wanted the government to answer the question that the court had actually asked. The court said, yes, let's talk about that. And it was never brought up again, and it was never addressed again. Does the judge give a later explanation of this sentence? On the very last time... There were three sessions in which this sentencing occurred, and on the last time, the court went through the 3563A factors. Right. Now, I remember that part. She says on page... This is the very last page of the opening brief. She says, I also decided not to impose any further term of supervised release, which has certainly caused Mr. White, I mean, a lot of trouble. So I took that into account in deciding the 20-month sentence, but without any further supervised release was appropriate. And here's the thing. And it was also clear that the probation officer did not want him to have further supervised release, because it became clear, at least in the probation officer's view, which seemed to be, I found, was substantiated by Mr. White's conduct, and it goes on. So, I mean, I'm having trouble finding her... finding evidence she's uninfluenced by the probation officer. She refers to him twice. Yes, Your Honor. But there would have been... It would have... It is not... Let me put it this way. The district court was certainly entitled to view this, that further supervised release would not have been productive under the circumstances, given that the probation officer did not want to continue supervised release, and given that the defendant also was complaining about his probation officer. Maybe this guy doesn't have the disposition to be a probation officer. I don't know. We'll see. Okay. Well... Anything further? If the court has no further questions, then the government respectfully requests that this court affirm the district court's judgment, and also we ask that you order the clerk of the district court to correct the written judgment below to reflect that the defendant was found guilty only of violation one. All right. Thank you. Thank you. Mr. Carlson. I have nothing further, Your Honor. All right. Thank you, and thank you very much for taking this case, Mr. Carlson. We appreciate it. Thanks as well to the government. We'll take the case under advisement.